May it please the Court, I am Joshua Glellen. I will be arguing all four of the cases on behalf of the petitioners. How do we get to four? The first one is to consolidate the cases. They were actually briefed together. There are two central issues in these cases. The first, in all four cases, is the legal validity of the hourly rate setting practice of the administrative tribunals under Longshore Act Section 28. It is a fee-shifting provision providing for the award of a reasonable attorney's fee, just like other federal fee-shifting statutes. The second issue, which is present only in the Dyer case, relates to the qualifications for whether the thereafter clause of Section 28A of the Longshore Act, referring to the claimant utilizing the services of an attorney after the employer has denied responsibility for a case, whether that thereafter clause serves as a qualification for the award of fees, or as a limit on the legal services for which that award should be made, otherwise encompassing all services reasonably necessary to the successful prosecution of the claim. Here, as is typical, we have some legal services performed before the employer has said, no, we're not accepting any liability on this case. The question is whether once you have, once the employer has done that and the claimant has used an attorney and successfully prosecuted the claim so that the case does qualify for an award under Section 28A, does that award encompass those earlier performed services or not? That's in the Dyer case, right? That's in the Dyer case alone, yes. And there is an inter-circuit conflict already in existence on that issue. On the first issue, in each case, the employer's rebuttal of the claimant's attorney's Portland market rate evidence went only to show that prior awards under the Longshore Act by the administrative tribunals had been at rates lower than the market rates for Portland litigation attorneys shown by the claimant's attorney's evidence in support of his claimed rate. That was the only rebuttal. Yet, each of the administrative tribunals held either explicitly and directly or by implication and effect that the only other attorneys who are relevant, the only other fees that are relevant, are those of claimant's attorneys under the Longshore Act. Let me ask you this. This doesn't seem to be apparent from the record. How large is the bar here in Portland that does this kind of work? I'd certainly start by saying Mr. Rabinowitz, the claimant's attorney in each of these cases, is the dean of the local Portland bar and, indeed, of the Pacific Northwest Longshore claimant's bar. There are probably another five attorneys in the entire Northwest who make their primary practice under the Longshore Act on behalf of claimants. And is the fee award schedule roughly the same for all of these lawyers? I mean the fee award schedule for these cases, not their practice in other areas. No, I understand, yes. I would say yes, although each of the tribunals does often distinguish Portland from other cities on the west coast and make lower fee awards here than in those other cities. And those other cities being Seattle and? San Francisco and the port of Long Beach, L.A., and San Diego. Now, this may not be on the record in Tacoma. How do we do in Tacoma? I cannot say I have seen a fee award coming out of an attorney in Tacoma. I don't believe there are any longshore specialists there. And by specialists, I mean anyone who does a substantial amount of this work. Okay. What do you make of our decision in Camacho and the follow-on decision in Moreno, where in a different context, certainly in Camacho, we said it was inappropriate to look solely to credit attorneys that the bar is bigger than, you know, the scope is bigger than that, it's not that specialized, that it's inappropriate to look beyond to see what a market rate is for attorneys who take on plaintiff's claimant type of cases or is, well, okay, why don't you comment on that? Unless I've misunderstood the latter part of your question, we certainly hope we can make a great appeal of the Camacho opinion. As I read it, it disapproves looking only at prior fee awards under this particular statute. And that is indeed what the administrative tribunals regularly do, is limit their consideration for prior awards under the Longshore Act itself. I would add that in any of the other fee-shifting areas, the attorney who takes on the client is free to negotiate a rate with that client. Now, frequently the client is not a person of substantial means and that the negotiation for an hourly rate, if there is one, is necessarily affected by the client's situation. So I think many attorneys who take on those cases under other fee-shifting statutes, if they do establish an hourly rate by negotiation with their client, do it on the charge a less than market rate to the client because of the client's limited means. Under the Longshore Act, however, we do have a unique situation, and that is the one point I think on which the petitioners and the respondents are in full agreement here. The Longshore Act fee-shifting provision is unique in that here, unlike any other statute, the claimant's attorney is foreclosed as a matter of law from negotiating any fee with the client. It's a federal crime to accept any fee other than what's approved, and the regulations are explicit that a contract stipulating an hourly rate is of no effect. So the only time a longshore claimant's attorney can be paid is if he or she prevails and gets a fee award from the relevant tribunal before whom the services were performed. Now, what this means is that there is, in an absolute and categorical sense, no market for services on behalf of longshore claimants. There may be no negotiation with the client over that, and I think the Supreme Court has made it clear, as has this Court, that in the context of the Lodestar determination, the market means what attorneys of similar qualifications in the relevant locale charge to arm's-length clients, indeed the Supreme Court has referred to affluent clients, for similar services. Now, there are greater or lesser degrees of similarity. Mr. Rabinowitz's market rate evidence here goes to Portland commercial litigators because that is essentially commercial litigation is the one general area in which it covers a lot of territory, but we are talking about negotiated rates. The parties are there. There is a competitive market which rewards expertise and discounts lack of experience, and also, of course, how likely a client is to pay premium rates depends on the importance of the matter to the client. That's the closest thing. It is a general area. It covers everything from specialized and very technical commercial litigation, such as antitrust or patent work, right down to collection activities or breach of contract actions, which often are certainly no more complicated than litigating a longshore case. Before the time runs too far on you, I'd like you to discuss the issue that shows up in a dire case, the meaning of the word thereafter. Yes. The Benefits Review Board has been back and forth and back and forth. Now, I think the law is pretty clear. We owe no deference to what the BRB does. I think that law is quite clear to me. And we owed some deference to what the director does. That's correct. It appears to me from what I've read that both parties are in agreement that the director's current position is that the fees are owed prior to the adversarial relationship being developed. Is that correct? Once all the qualifications are met, then yes, the fee award should include the pre-controversial so-called services. And that's the current director's position? It is indeed. And the parties are in agreement on this point? I guess I'll find out. I think certainly the respondents have not suggested that the director has taken a contrary position anywhere. I believe they hedged their bets. Where in the record in front of us can I look to see that director's position? Besides the Sixth Circuit's opinion in the day case that discusses it, I have this morning delivered a further letter containing supplemental authorities that goes directly to that question. There is a regulation that was promulgated by the Department of Labor in 2000 on the attorneys, the application of Longshore Act Section 28 in the context of the Blackfong Benefits Act, which adopts many provisions of the Longshore Act, virtually the entire Longshore Act, all the procedural provisions, including the attorney's fee provision, but vests the Secretary of Labor with the authority to vary those provisions for purposes of their application to the Black Lung Act. This 2000 regulation explicitly says that their after clause is just one of the qualifications, and once all the qualifications are satisfied, the fee award should include the pre-controversial services that were reasonably necessary to the eventual successful prosecution of the case. It further said in response in the preamble to that promulgation of that regulation, it explicitly considered comments that had said this is beyond what Section 28A permits because of the thereafter clause, and the preamble responded, we would have the authority to vary it for purposes of the Black Lung statute, even if you were correct that Section 28A doesn't provide this in its own terms. Now, is the Secretary of Labor's position the same even after the Clitchfield-Cole case? Yes. That is to say, the Cole case seems to me to come up with a different interpretation of that word. Well, I would say no. The Clitchfield-Cole case defers to the Director's position that nobody can test the meaning of the word thereafter. Let me say that again. Thereafter means after that. The question is whether that clause ---- The question is what the word that means, within after that. No. The question, I would say, is the function of that clause as merely one of the criteria for entitlement to a fee award. I'm sorry. We drifted off and it was not your fault. Is it your position that the Secretary of Labor's position with respect to this end of the Black Lung cases is the same as the court arrived at in Clitchfield-Cole or not? Yes. Because? I don't read them the same way, but you may be able to educate me. Let me say this. The regulation that the court considered in Clitchfield-Cole is not the same as the regulation that eventually was promulgated. I see. That, I think, is probably the key. The court was very troubled by the inconsistency of the Director's position before it in that case that it's only a qualification, it's not a limitation. The inconsistency between that and a pending proposed regulation. Well, between that decision and the promulgation of the final regulation, the Director drastically changed the regulation so that it is perfectly in accordance with the position the Director argued before the court there, that is that the thereafter clause is only one of the qualifications and is not a limitation. The Fourth Circuit agreed that the statute was subject to that construction. Now, there was a limiting factor placed on it for purposes of the Black Lung Statute only because under that statute the claim is not served on the employer promptly after it's filed. That is to say, before going forward, you need to go to the government, unlike under the Lung Sure Act. Correct. In the Lung Sure Act, you go straight to the employer with the claim. Right. Well, you file with the district director, but it's served immediately on the employer and they have to take a position within 30 days, whereas under the Black Lung Statute, they get a claim from the claimant and it's not even sent to the employer until the Department of Labor has developed the evidence and made a tentative ruling on it. Only then do they even notify the employer that it's pending. Here's the policy question, if you will, that occurred to me. As if you allow a claimant, before he's even given notice to the employer, to run up attorney's expenses on the theory that he needs the expertise or whatever, at that point the employer is confronted with a claim that has attached to the claim pendant attorney fees already incurred. How does that play out in the idea of having the parties only litigate over legitimate disputes where you have a front-loaded attorney fee claim being made, so that the employer then has to weigh that in the balance, deciding, well, if I contest this and lose, I've got a penalty attached to it of these big fees. How do, if I settle, I can liquidate my costs even though I think it's a close claim? That's a close claim. That's what it's troubling me. I'm so glad you asked that question, Judge Fischer. You asked me to just before we got up here. The statute answers that concern by giving the employer a 30-day grace period after it receives notice of the filing of the claim from the district director, even though they've always already received it, but it's the formal notification from the district director that starts their 30 days to accept liability. If they accept liability, they are not liable for any attorney's fees. The fact that the claimant's attorney has developed the case before that 30 days has run only means the employer is presented with a better record for them to determine that they should accept liability. I don't think that answers my question. My point is that that's the theory as to why a lawyer's help would be useful, and I agree with that. But that means that if they accept and therefore avoid the fees, so that may be some check on the process, but the other is that they run up unnecessary fees for something that the employer says, I don't know why you had to go through all of that. If we'd just known about the claim, we would have paid it. Well, the reasonable necessity for the legal services is always a limit on the fees that are recovered. So you say at the back end, if it comes to the fee being awarded, then that's the control. Yes. And in the situation where within the 30-day grace period after receiving notification they do accept liability, a fee award can be made against the claimant, but the district director's office would certainly say if any of those legal services were unnecessary, they would deny fees. Let me make sure I understand the statute. So let's say that the injured law enforcement worker goes to the attorney. The attorney works up the case, does a very good job. That is then presented to the employer. If the employer says, you've now made a compelling case here, your benefits, the attorney is paid by the longshore worker, not by the employer, correct? Correct. And it is only if the employer, looking at this case, worked up by the lawyer, which may be a very good job, but it may not be on the facts, something that the employer thinks he actually owes on, if the employer chooses to contest at that point. Under your theory, the employer owes attorney's fees both before in the preparation and after the controversy. That's the statutory system. Exactly. In your view, that's the statutory system. Yes. In fact, I don't think the defense would disagree with that. The only reason I say in your view is, in your view, the fees are awarded pre-controversy. I'm not sure the other side agrees with that question. I do not agree with that part. Okay. Now, your time's almost run. Let's hear from the other side, and then we'll give you a chance for rebuttal. Thank you very much. Thank you. If it pleases the Court, I'm John Dudry. I'm for the employers and insurers in this case. And I'm also appearing for Mr. Metz, who has one of the insurers in the Price case. And, Fisher, we're back. Yes, I recognize that. Anyway, I'd like to start with the dire case. And I do disagree with Mr. Glellan's characterization of there being a present circuit split. And that's because the Clinchfield-Cole case was a split. I think he's kind of hoping for a circuit split. Pardon me? I think he's hoping for a circuit split. I think that's a better characterization. The Kemp case has never been overruled. The Fifth Circuit's been quite clear in their view. And recently the Sixth Circuit, which is the first case at the circuit level to attract a dissent. And I think as the case is briefed, much of the claimant's argument comes from the dissent in the Day case. The word thereafter does mean after that. Can I ask you, before you get into the specific meaning of that, your position on what the director's position is? The director has been all over the map. What is his current position? I think if to look at the director's current position, you would have to look at the Day case because the director argued. I'm sorry, look at what? Look at the Day versus James Moraine in the Sixth Circuit. But that's what his position was in the Day case. Given that he's been all over the lot, what do we know about his position today? There is no longshore regulation comparable to the regulation Mr. Glellan has said. And is the director, I mean, we're now to this point without the director in this case or these cases. Has anybody asked the director recently what his position is? I certainly haven't. I mean, they had the right to file a brief and decided not to. Decided not to, that is to say someone specifically approached them and they said no? Or they just have the right and they didn't speak up? I mean, what do you mean they decided not to? They had the right, asked for an extension of time to file a brief, and then when the extension was up, decided they didn't want to after all. It's in the correspondence and of course filed. Would either of the parties have, I'm not yet speaking for the panel, have an objection to our asking the director what his position is at this time? And would you welcome or object? They're entitled to be a party by rule and by case law, and they're entitled to come in and speak. If the court asks, I can't say don't do it. It's their right. The fact is, though, that in the Longshore setting, as opposed to the Black Lung setting, the director has chosen to advance his views inconsistently and through litigation at the circuit level, and I think at least in the Black Lung cases at the board level. The biggest problem I've got with the, at least the case as it was briefed on this issue, is that when Congress changed the law to add to the original rule that the claimant would always pay the attorney fees out of the compensation, the legislative history makes it clear that that original provision was retained in the law and two scenarios were imagined or weren't imagined. They were adopted as the requirements in the settings that it was believed would apply to make the claimant free of the burden of paying fees in the majority of the situations. We aren't interested so much in 28B here. This is 28A where the claim is disputed at the outset, as this one was, and then subsequently was accepted. This court's decision in Todd Shipyard's versus Director of Watts, though, reads the thereafter language in 28B the same way the Fourth, Fifth, and Sixth Circuits have in the 28A context, and I think that's a consideration that should be important. It's the same word. It's not only in the same statute. It's in the same section of the same statute. So I don't know what the director would say, but their rulemaking is, as Mr. Glellen concedes, under a very, very broad scope of authority in black lung matters, and this is part of the statute. It's cited in our brief in Dyer, and the fact is that the other significant thing about the procedure there is that the district director makes a preliminary finding of liability or non-liability, and if it's a finding of liability, that's when the employer gets in, and if the employer doesn't reject it, they pay, and this is totally different from the Longshore setting. Informal conferences are important, and they're very important for attorney fee under the other section, 28B, but the director can't make a binding recommendation. So it's a very different procedure, and that's why the language that Mr. Glellen emphasized in the black lung regulation about the adversarial relationship is important. However, this comes out of that case law, because at one time the director's position was in the setting of these procedures, if there's an adversarial relationship when the district director says the claim's not payable, then fees are payable from the beginning. Otherwise, no. So I think we need to concentrate on the Longshore cases. The reading that the other circuits have given is, as even the concurring judge in the Clinchfield-Cole case said, the most straightforward reading. I'm embarrassed to have to ask you to do this. Your reference to the Todd Shipyard case and our decision in that case went by me a little too quickly. What case is that? I will give you the citation, Your Honor. And the? That's in the red brief in the Dyer case. Yeah. And it is 950 FedSecond 607. And the full name of the case is? Todd Shipyards v. Director OWCP. And watch, it's discussed at pages 25 through 27. I got you. Absolutely. I'm now with the program. Thank you. All right. And I think that's a landmark, or at least an arrow on the road, pointing in the same direction as the other circuits have gone on this. Now, I'd like to switch over to the other issue, if the Court doesn't have any more questions about Dyer and what thereafter means, and address the main question, as Mr. Glellan puts it. As I see it, is whether the regulation itself that the district director and the judge of the ALJ relied on, 702.132A, if followed is sufficient to support an award when it's clear that the award takes the factors of that regulation into account? I know the panel hasn't had a chance to see Mr. Glellan's 28J letter yet, but one of them. The problem with the argument you're going to be reading when you see the letter is that the regulation takes up some of the Lodestar factors. It takes up five of them. And it doesn't say it's an exclusive list. It doesn't say you can look at these five and only these five, and not the other surviving six factors. So the person, the attorney seeking fees, is free to argue as many of these factors, as many markets as he wants. I think in Camacho, the point there was a little convoluted. If I understand it, the plaintiff's attorney said, well, the district judge only looked at fair debt collection practice cases. And the court said, well, no, there was one other than that. Copyright case. Copyright case, which is a pretty distinct fee-shifting regime of its own. But the problem then was, as I understand it, the court couldn't figure out how the district judge had accounted for that, if, in fact, it had been accounted for at all. As I understand it, though, part of the concern for the remand was that the judge needed to make sure that he was adequately understanding the complexity of the task that was before the plaintiff's attorney, and that he might have just looked at it as sort of a cookie-cutter case, and I'll give you a cookie-cutter attorney fee award, which I don't think is what's happened in these cases, in any of them. My recollection is the concern was it was tied to a specific, the notion that somebody was a specific bar that was limited to those kinds of cases, and that the court seemed to be focused but for the one reference to an out-of-circuit copyright case. And so the same concern comes to mind here is if the board says $250 an hour is what we pay, we've done it before, it's good enough now, it'll be good enough until we decide to change, what are they looking at? What did the original $250 come from? Well, we can, on this record, you can see that it was, that they used it in 2004 in Christensen, and again in 2006. Didn't Christensen say we used it then because we used it before? They didn't say that one way or the other, Your Honor. They did refer to one of the board's regulations, and they stated it was appropriate for the geographic area. Based on what? Well, I'm not sure. Well, we aren't either. That's the problem. So it's supposed to be a reasonable attorney's fee, and there's some evidence that was put forward that $300, $350 was now appropriate or could be appropriate. You know, there's, what else is the attorney to do? He can't enter into a contract. Correct. So he's got to look to see what in the market out there could I be making if I decided not to take this other line of work. And just let me finish. And that was echoed again in the subsequent Moreno case, with Chief Judge Kaczynski pointing out, you know, there are reasons why these fee-shifting statutes exist, and in context other than the Longshoremen's Act cases, we have, at least in this circuit, been sympathetic with the notion that attorneys who are taking these plaintiff's types of cases should have the opportunity to present to the court, in most cases, evidence as to why their fees should be higher than whatever the judge decides is the thing, and we need to know at a review level, you know, what were the considerations. And my problem in this case is that I don't see any analysis as to why 250, other than it seemed to be reasonable to the board, and then they decided to follow it in subsequent cases. Mr. Rabinowitz had the opportunity to present the additional evidence. He did. He put his declaration in, and he put in some studies. And in the, of the cases before the court today. Before you evade my point, though, yes, he had the opportunity to put it in. I understand. And it may be that he didn't put in enough. But I'm just asking in terms of what do we expect, should we expect from the board to articulate why it comes up with the base fee, other than it just seems reasonable to it? I would say it has to be the evidence of other cases. Even if the other cases, you know, it's kind of received wisdom. You go back to the original site and you find out that the court that made the point of law somehow didn't argue or didn't understand or analyze. And then we spend the rest of our time trying to distinguish the case or say, well, why are we bound by that case? So analogously, why in this regime should the board not have to put forward some other case, other than to say, well, in our declarative wisdom, we decide this is reasonable and then the next time a fee comes along, well, we did it then, we're going to do it now. Well, this court in the Finnegan case, it's a very brief opinion, indicated that the board cited and referred to its own regulation in setting the fee that it did and that that was sufficient to withstand review. I can tell you which one of these cases it's cited in. It is Finnegan v. Director, OWCP, 69, Fed 3rd, 1039, 9th Circuit, 1995. And that's cited in the Dyer case. It may be cited in one or both of the others as well. I do want to point out that the attorney did not, again, begin by asking for $250 and then raise it to $350 in an amended petition. In Christensen, that was the case. In Price, it started a little lower because the first fee petition was filed a little earlier. But the board started with $250 because that's what was asked for. There were three fee petitions. That's what was asked for. Actually, it wasn't what was asked for. It started at $237.50, then it went up to $275, then it went to $350. And the board awarded $250. And you have to thread your way through all the different orders in the excerpts. To go back to Judge Fisher's question, at least if you want to look at what was considered below, in the Van Skuyte case, the ALJ issued two pretty detailed orders, one initially making the award and the second one declining to reconsider. And he took on this analogy to commercial litigation and found that it wasn't that strong. And the saga of attorney fees, at least in Portland, is an ongoing one. And there are more cases coming, including one that was just filed in the Ninth Circuit, again in Erroll Price, where these records are being more thoroughly developed at the ALJ and the district director level. But no rule of law that I'm aware of requires the judge or the district director as a finder of fact to accept the analogy. Now, in some cases, I think the finder of fact said, I don't need to consider it. But in others, you'd have to go and look at the individual orders. The analogy was considered and found wanting. As the regulation permits, it's not a closed-end system. So I think in each of these cases, they have followed, they have cited and have demonstrably followed the requirements of 702.132 or the board's equivalent, 802.203. And at that point, if they've considered the evidence and followed the regulation, we think that the only way this can be overturned is for abuse of discretion. I've got three minutes left, and I don't know that I've got any other particular points to make that aren't in the briefs. So if there are no further questions, I'll rest. The reasons for the Christensen award are not nearly as detailed or articulated as they are in the Vance Guide case. That's correct. Although what you have from the board level, though, is they're put in a very difficult situation. And thank you for asking that, because there is one point I'd like to make. In the briefs, Mr. Rabinowitz asked for what he calls a prime rate enhancement, and that comes from the Welch decision and ultimately from the Washington Public Power Supply litigation several years ago. That was never asked for. And here's the problem the board was facing in Christensen. In 2004, they say $250 an hour is a reasonable fee. Twenty-six months later, two years and two months later, they say it's still reasonable. We're not going to give you $350. And as a prime rate enhancement, that would have been about triple what the prime rate was during that period of time. And had there been a 6% enhancement, which is the kind of thing the district director has done in this area when it's been requested, I don't think that it would have been acceptable to the claimant's attorney. So they were asked to approve a $350 fee, which they didn't have any precedent for, and the analogy didn't appear to be that impressive to them, although you're right, the reasoning was pretty short and terse. Thank you. Okay, thank you very much. We've got a little time for rebuttal. May I please? The Court, let me begin as briefly as I can on the issue in the Dyer case, the Section 28A qualification case. Mr. Dugger said Kemp, the Fourth Circuit's original decision on this, has never been overruled. That's the case in which the Court said the function of the thereafter clause in Section 28A is ambiguous. We defer to the Board's resolution of that ambiguity. But certainly that's never been overruled, and we don't disagree in any way with that. In fact, that's exactly the approach that we say this Court should take. That is, the function of that clause is ambiguous. The only difference is, as the Fourth Circuit itself recognized in the later Clinchfield-Cole case, deference is not owed to the Board's resolution of that ambiguity, but to the Director's. Can I ask you what happens if the Director keeps changing their mind about whether it is or isn't, and then what do the courts, do the courts constantly keep evolving and changing the result? To the extent that the Director's position changes only as a litigation position, certainly it affects the deference, the extent of the deference that's due. However, that change, those changes in the Director's position, to the extent they have actually existed, have been resolved, in our view, by the adoption after full notice and comment rulemaking of this Black Lung Regulation explicitly construing Section 28A to make that thereafter clause only a qualification, not a limitation. That's my shorthand for this. Let me ask you this. What bearing do you think the Todd-Shipyard case has and the subsection B has? Mr. Dudry's point about Todd-Ship was that it reads the thereafter clause of Section 28B the same way as the Fourth, Fifth, and Sixth Circuits read the similar clause of Section 28A. I think I wrote that down correctly. Absolutely not true. The only thing that that decision concerned was treating the thereafter clause of Section 28B as a qualification for the award of attorney's fees. It was not satisfied in that case because as soon as the District Director made a recommendation, the employer complied with it, so there were no proceedings thereafter. Okay. Well, okay. Yes, I suspect my colleagues have already read Todd-Shipyard, and I can tell you I will read Todd-Shipyard. Yes, I'm perfectly happy to have the Court apply the thereafter clause of Section 28A the same way. Now, you've run over it, but if you have a paragraph that you'd like to finish up, go ahead. On the other issue, the hourly rate issue, the regulation lists five factors. It was promulgated before any of the Supreme Courts and the Courts of Appeals lodestar jurisprudence was even invented. It was back at the time of the Third Circuit's Lindy against American Radiator and the Fifth Circuit's Johnson against Georgia Highway Express. There was no lodestar analysis in existence yet when this reg was published, and its promulgation shows that it was not intended to isolate this from the development of general law on this. The ALJ's – this is getting to be a very long paragraph. I'm sure you've seen some of my paragraphs. No, but if you could wrap up, we would appreciate it. Yes. The ALJ's treatment of the market rate evidence simply did not take into consideration the fact that there was no rebuttal to that market rate evidence, and this Court in Camacho has said clearly there has to be rebuttal of the plaintiff's case. Okay. Thank you both. Thank both of you for a very helpful argument. The cases of Christensen, Dyer, and Van Schaik are now submitted for decision. The next case on the argument calendar is Derrick v. Medical Consultants Network. Thank you. We're still setting up, so. Thank you. Thank you.
judges: Fletcher, Fisher, Roll